UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JONISHA M. G.,

                                Plaintiff,

v.	5:22-cv-1412
	(TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

APPEARANCES:	OF COUNSEL:

NICHOLAS, PEROT LAW FIRM	MICHAEL J. WELCH, ESQ.
219 First Street
P.O. Box 720
Liverpool, NY 13088
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION	FERGUS J. KAISER, ESQ.
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER

**I.	INTRODUCTION**

Jonisha M. G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Dkt. No. 1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge. Dkt. No. 5.

This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c) in accordance with General Order 18. *See* Dkt. Nos. 13, 18. For the reasons discussed below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion is denied.

## II.   BACKGROUND

Plaintiff was born in 1985, was 32 years old at her alleged onset date of disability, and 33 years old at the time of her application for benefits. T. 151, 196.[1] She has a ninth grade education and no vocational training. *Id*. at 153-54. Plaintiff previously performed work in: hotel housekeeping, homecare, retail stocking and maintenance, restaurant cashier and supervisor, call service, and home health aide. *Id*. at 154-58.

On May 14, 2019, Plaintiff protectively filed an application for social security benefits. *Id*. at 196. She alleged disability beginning on January 2, 2018, due to lupus, myasthenia gravis, and asthma. *Id*. at 196-97. Her applications were initially denied on September 18, 2019, *see id*. at 212, 231, and again upon reconsideration on May 13, 2019, *see id*. at 261, 292. On October 22, 2020, June 3, 2021, and November 18, 2021, Plaintiff appeared at hearings via teleconference before Administrative Law Judge ("ALJ") Gretchen Greisler. *See id*. at 88-194.

On March 2, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. *See generally*, *id*. at 18-32. The ALJ's decision became the final

---

[1] The Administrative Record/Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Citations to the parties' submissions will use page numbers assigned by CM/ECF, the Court's electronic filing system.

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 9, 2022. *Id*. at 1. Plaintiff timely commenced this action on December 29, 2022. Dkt. No. 1.

### III. LEGAL STANDARDS

#### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

**B. Standard for Benefits** [2]

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, therefore, "decisions under these sections are cited interchangeably. *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

To be considered disabled, a plaintiff seeking disability benefits must establish she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  Additionally, the claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess*, 537 F.3d at 120; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working.  *Id*.

IV.     THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  T. 18-32.  At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2024, and had engaged in substantial gainful activity since the alleged onset date of January 2, 2018.  *Id*. at 20.  Proceeding to step two, the ALJ determined Plaintiff had the following severe impairments: "myasthenia gravis, migraine headache, asthma, lupus, fibromyalgia, and post-traumatic stress disorder (PTSD)[.]"  *Id*. at 21.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id*.

The ALJ next determined Plaintiff had the residual function capacity ("RFC") to perform sedentary work with certain additional limitations.  *Id*. at 23.  Specifically, the ALJ found:

> [Plaintiff] would require a five-minute change in position after standing or walking for 15 minutes, but retains the ability to remain on task.  The claimant can occasionally stoop, balance, and climb stairs and ramps, but cannot crouch, crawl, kneel, climb ladders, ropes, or scaffolds, or work at unprotected heights or in close proximity to dangerous machinery.  She can frequently reach, handle, finger, and feel.  The claimant cannot work outdoors or tolerate concentrated exposure to respirator irritants and extreme temperatures.  She can perform simple and detailed but not highly complex tasks at a consistent pace, but not at a fast production rate pace such as would be experienced in assembly line type of work.  The claimant can tolerate occasional contact with coworkers and the public.  She can make simple decisions and tolerate occasional changes.  The claimant can tolerate moderate noise as that term is defined in the SCO.  She requires use of a cane for prolonged ambulation or walking on uneven surfaces, but retains the ability to carry small objects such as files in her free hand.

*Id*.  At step four, the ALJ concluded Plaintiff could not perform her past relevant work.  *Id*. at 29. Finally, at step five, based upon Plaintiff's age, education, work experience, and RFC, the ALJ

6

determined Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. *Id*. at 30. Accordingly, the ALJ concluded Plaintiff was not disabled.

## V. DISCUSSION

Plaintiff argues the ALJ erred by failing to: (1) determine her conditions did meet or equal the severity of a listed impairment; (2) determine her RFC was less than sedentary; (3) properly evaluate and consider her impairments in combination; and (4) properly evaluate the testimony of the vocational rehabilitation witness. *See generally*, Dkt. No. 13. The Commissioner contends the ALJ's step three, RFC, and step five determinations are supported by substantial evidence. *See generally*, Dkt. No. 18.

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a); *see also*, *e.g.*, *Pratt v. Astrue*, No. 7:06-CV-0551 (LEK/DRH), 2008 WL 2594430, at *6 (N.D.N.Y. June 27, 2008) ("If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled . . . .") (citation omitted). At step three, the burden is on the claimant "to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnotes omitted, emphasis in original).

In this case, at step three, the ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." T. 21.  The ALJ stated she "considered the claimant's impairments using Section 11.01 *et seq*. (neurological), specifically 11.12 (myasthenia gravis), Section 12.01 *et seq*. (mental), specifically 12.04 (depressive, bipolar, and related disorders) and 12.15 (trauma and stressor-related disorders), and Section 14.01 *et seq*. (immune system), specifically 14.02 (systemic lupus erythematosus) of the Listing of Impairments." *Id*.  The ALJ explained, with respect to the aforementioned mental impairment listings, Plaintiff's impairment(s) failed to satisfy the "paragraph B" or "paragraph C" criteria,[3] but conducted no further analysis concerning the physical impairment listings.  *See id*. at 21-23.

In the instant matter, Plaintiff contends this was error.  Specifically, she avers:

> [R]ather than conduct an analysis of the Impairment Listing criteria (for Sections 11.12 and 14.02) using the claimant's testimony and substantial medical evidence regarding the impact of either of these impairments, individually or in concert/simultaneously with each other, on the functional abilities of the Plaintiff, to determine whether these two *physical* Impairment Listings' criteria were satisfied, the Administrative Law Judge simply states in a single conclusory sentence, without explanation or discussion, that "[t]he record does not reflect the necessary requirements for the claimant's impairments to meet any of the above stated sections of the Listings of Impairments."  As such, the Administrative Law Judge abused her discretion and committed errors of law thus rendering a decision not supported by substantial evidence.

---

[3] *See generally*, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2) (To demonstrate an impairment meets the standard under listings 12.04 or 12.05, a claimant's "mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C.").

Dkt. No. 13 at 6 (emphasis in original).[4]  The Commissioner argues the ALJ's step three determinations are supported by substantial evidence.  *See generally*, Dkt. No. 18 at 8-14.  With respect to the ALJ's conclusion Plaintiff did not satisfy the listing criteria for systemic lupus erythematosus, the Court disagrees with the Commissioner.[5]

As the Second Circuit has explained, "an ALJ 'should set forth a sufficient rationale in support of h[er] decision to find or not to find a listed impairment' . . . ."  *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (Summary Order) (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).  While "the absence of an express rationale for an ALJ's conclusions does not prevent [a reviewing court] from upholding them so long as we are able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence[,]" *id.* (citing *Berry*, 675 F.2d at 469)

---

[4] More generally, Plaintiff argues she suffered from at least two severe physical impairments that met or equaled a listed impairment, myasthenia gravis and lupus, as well as at least one severe mental impairment that met or equaled a listed impairment, Section 12.04-Depressive, bi-polar and related disorders, characterized by a disturbance of mood accompanied by a depressive syndrome, and/or 12.15- trauma and stressor related disorders.  *See* Dkt. No. 13 at 5-12.

[5] By contrast, the Court can glean the ALJ's consideration of the criteria for listing 11.12, myasthenia gravis.  While Plaintiff asserts evidence demonstrates her disorganization of motor function in two extremities resulting in extreme limitations, in satisfaction of 11.12(A), and marked limitation in physical functioning and one of the areas of mental functioning described in 11.12(C), the ALJ's RFC analysis and subsequent narrative thoroughly assessed the supporting evidence concerning Plaintiff's strength, ranges of motion, stance, gait, ability to ambulate, and use of assistive device(s), *see* T. 24-29, and the ALJ's step three analysis of the mental impairment listing requirements referenced substantial record evidence concerning Plaintiff's limitations with understanding, remembering, or applying information, interacting with others, concentrating, persisting, and managing pace, and managing herself, *see* T. 21-22.  In any event, to be sure, "whether there is substantial evidence supporting the [Plaintiff]'s view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (Summary Order) (citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)) (emphasis in original).

(internal quotations omitted),[6] here, the other portions of the ALJ's decision also lack discussion evincing consideration of the evidence Plaintiff submitted related to the listing criteria for systemic lupus erythematosus. *See, e.g.*, *Megan J. v. Saul*, No. 1:19-CV-1021 (DJS), 2020 WL 3545545, at *4 (N.D.N.Y. June 30, 2020) (acknowledging the court is permitted to affirm an ALJ's decision that a claimant did not meet the listing requirement so long as the decision is supported by substantial evidence, but concluding "[a]ffirmance under this rule is not an appropriate option here because the remainder of the ALJ's decision does not discuss the diagnostic criteria for [the relevant] Listing . . . in sufficient detail for the Court to assess whether the conclusion was supported by substantial evidence.") (citation omitted). Therefore, remand is appropriate.[7]

---

[6] Additionally, Social Security Ruling ("SSR") 17-2P specifically provides:
> Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An [ALJ]'s articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

SSR 17-2P, 2017 WL 3928306, at *4 (S.S.A. Mar. 27, 2017); *see also Ruiz v. Comm'r of Soc. Sec.*, 625 F. Supp. 3d 258, 266 (S.D.N.Y. 2022) ("[A]n ALJ's determination that a claimant does not meet a listing does not require extensive explanation and may be explained at a later step in the process . . . .") (citations omitted); *Matthew S. S. v. Comm'r of Soc. Sec.*, No. 6:21-CV-0014 (TJM/ML), 2022 WL 686704, at *4 (N.D.N.Y. Jan. 20, 2022), *report and recommendation adopted*, 2022 WL 685416 (N.D.N.Y. Mar. 8, 2022).

[7] *Compare Megan J.*, 2020 WL 3545545, at *3 ("The decision under review did not discuss [the listing] criteria individually or explain how or why Plaintiff failed to meet each. Instead, the ALJ provided a one-sentence, conclusory analysis without any recitation of the facts or medical evidence . . . . As a result, it is unclear from the ALJ's decision which criteria . . . the plaintiff failed to meet." ) (citing *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d at 144) (alterations in original, internal quotations and additional citation omitted), *with Comito v. Colvin*, No. 6:12-CV-0022 (GLS), 2013 WL 2444189, at *4 (N.D.N.Y. June 5, 2013) ("[Plaintiff]'s claim that the ALJ failed to discuss listing 14.02 is flatly incorrect . . . . The ALJ placed specified emphasis on the listing and found that [the plaintiff]'s lupus was stable, had not affected multiple body

"Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system." 20 C.F.R. Part 404, Subpart P, App. 1 § 14.00(D)(1)(a). To satisfy listing 14.02 for systemic lupus erythematosus, a claimant must demonstrate either:

> A. Involvement of two or more organs/body systems, with:
>   1. One of the organs/body systems involved to at least a moderate level of severity; and
>   2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> or
>
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>   1. Limitation of activities of daily living.
>   2. Limitation in maintaining social functioning.
>   3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

*Id*. § 14.02(A)-(B). "Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ('lupus fog'), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis)." *Id*. § 14.00(D)(1)(a).

As relevant to this listing, the phrase "[c]onstitutional symptoms or signs . . . means severe fatigue, fever, malaise, or involuntary weight loss." *Id*. § 14.00(C)(2); *see also id*. §

---

systems, and had not presented with repeated manifestations.") (internal quotations omitted); *Tracie P. v. Comm'r of Soc. Sec.*, No. 3:19-CV-837 (FJS), 2020 WL 2309082, at *4 (N.D.N.Y. May 8, 2020) (finding the ALJ's step three conclusion that the plaintiff did not meet listing requirements was supported by substantial evidence where the ALJ addressed the listing criteria at step four, specifically noting "the ALJ found that Plaintiff's physical exams by her neurology, rheumatology, and orthopedic providers have not produced very significant findings . . . . [and,] that Plaintiff only occasionally complained to her providers of fatigue or malaise.").

11

14.00(D)(1)(a) ("Systemic lupus erythematosus . . . . is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss)."). "Severe fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function. Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id*.; *see also id*. § 14.00(C)(12) ("Severe means medical severity as used by the medical community. The term does not have the same meaning as it does when we use it in connection with a finding at the second step of the sequential evaluation process in §§ 404.1520 and 416.920 of this chapter.").

Here, the ALJ's decision did not identify the listing criteria for SLE, much less "discuss these criteria individually or explain how or why Plaintiff failed to meet each." *Megan J.*, 2020 WL 3545545, at *3. Plaintiff submitted medical records documenting lupus manifestations, such as progress notes wherein Dr. Bonilla-Trejos reported Plaintiff's history of "joint pain," with "intensity as bad as 10/10," "photosensitivity with severe rashes with sun exposures," "fatigue," "hair loss," "rheumatoid arthritis," and ANA positive bloodwork results. T. 1237-38. Bonilla-Trejos assessed "the patient has lupus criteria including positive ANA, photosensitivity, joint tenderness and a malar rash, . . . alopecia and fatigue." *Id*. at 1238.

Indeed, medical records submitted by Plaintiff from multiple sources document her fatigue. *See, e.g., id*. at 1238 (fatigue manifestation June 27, 2019), 1244 (positive for fatigue August 9, 2019), 1257 (continued to have fatigue April 3, 2020), 1706 (fatigue noted January 10, 2020), 1730 (positive for fatigue July 19, 2019), 1735 (same, June 19, 2019), 1740 (same, May 16, 2019), 1745 (same, May 6, 2019). Yet "fatigue" is mentioned only once in the decision, the ALJ merely noted Plaintiff reported fatigue during an appointment in April of 2020. *See id*. at

12

25. The record is also replete with indications that Plaintiff experienced discomfort, pain, and/or a lack of well-being, but the ALJ's decision did not assess whether these symptoms amounted to "malaise" in connection with listing 14.02.  *See*, *e.g.*, *id*. at 1238 (noting significant pain with range of motion in elbows, hands, and knees June 27, 2019), 1257 (continued pain and swelling in joints as well as stiffness April 3, 2020), 1259 (persistent pain and swelling in hands and knees May 29, 2020); *see also*, *e.g.*, *Garza v. Comm'r of Soc. Sec.*, No. 2:15-CV-11507, 2016 WL 703038, at *6-7 (E.D. Mich. Jan. 22, 2016) (finding the Commissioner's argument that the word "'malaise' must be used repeatedly in a claimant's medical records in order for her to satisfy" the listing requirement "untenable" and remanding the ALJ's decision for a proper step three analysis, explaining "there is at least some evidence in the record of fatigue and malaise . . . . [Yet n]one of these constitutional symptoms were discussed by the ALJ."), *report and recommendation adopted*, 2016 WL 687813 (E.D. Mich. Feb. 19, 2016)).

Because Plaintiff submitted records indicating involvement of two or more organs/body systems and supporting the presence of a "sense of exhaustion" and "feelings of illness, bodily discomfort, or lack of well-being," *see* 20 C.F.R. Part 404, Subpart P, App. 1 § 14.00(C)(2), the ALJ was required to provide some analysis of these symptoms *in connection with the listing criteria*.  *See Samantha S. v. Comm'r of Soc. Sec.*, No. 5:19-CV-621 (ATB), 2020 WL 2309094, at *11 (N.D.N.Y. May 8, 2020) ("While the ALJ may ultimately find that a considered listing does not apply to Plaintiff, he must still provide some analysis of Plaintiff's symptoms and medical evidence in the context of the Listing criteria.") (internal quotations and citations omitted).

Further, "it is well settled that Lupus" is an "unpredictable condition[] with periods of flares and periods where the patient is asymptomatic." *Medick v. Colvin*, No. 5:16-CV-0341

(CFH), 2017 WL 886944, at *13 (N.D.N.Y. Mar. 6, 2017) (citations omitted). For example, while Dr. Bonilla-Trejos observed improvement in Plaintiff's condition on certain occasions due to medication use, *see*, *e.g.*, *id*. at 1242, 1270, on April 3, 2020, he reported Plaintiff's lupus appeared "to be active, manifested with persistent fatigue, joint pain, joint swelling . . . . in spite of hydroxychloroquine." *Id*. at 1258. "[T]his Court is not a medical professional," therefore, "without some reasoned explanation as to why" Plaintiff's lupus symptoms "did not meet or medically equal one of the listings here, the Court cannot perform the meaningful review that it is required to perform." *Rebecca P. v. Comm'r of Soc. Sec.*, No. 6:21-CV-6083, 2023 WL 2955839, at *3 (W.D.N.Y. Apr. 14, 2023) (citations omitted).

In sum, "the Court recognizes that Plaintiff could establish 'at least a colorable case' that she satisfied" the requirements of listing 14.02 "and that the ALJ's decision was so deficient that it has left the Court unable to engage in a meaningful review." *Ashley C. v. Saul*, No. 3:19-CV-1212 (MAD), 2020 WL 6343306, at *5 (N.D.N.Y. Oct. 29, 2020) (citations omitted). "Whether Plaintiff has an impairment or combination of impairments that meets or equals a Listing is a determination reserved for the Commissioner." *Flake v. Comm'r of Soc. Sec.*, No. 7:15-CV-1128 (GTS/WBC), 2016 WL 7017355, at *6 (N.D.N.Y. Nov. 10, 2016) (recommending remand "for the ALJ to articulate her basis for her step three determination."), *report and recommendation adopted*, 2016 WL 7017396 (N.D.N.Y. Dec. 1, 2016). Accordingly, the matter is remanded for further consideration and explanation as to whether Plaintiff's lupus satisfies the criteria contained in listing 14.02.

"Because the Step Three analysis is sequential, and a reconsideration of Step Three may obviate or otherwise affect the final two steps, the Court will not consider Plaintiff's other

14

arguments." *Linda H. v. Kijakazi*, No. 3:21-CV-0121 (DJS), 2022 WL 3682937, at *5 (N.D.N.Y. Aug. 25, 2022) (citations omitted).

VI.   **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that the Commissioner's decision be **REVERSED** and **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings; and it is further

**ORDERED** that Plaintiff's compliant (Dkt. No. 1) is **DISMISSED** and the Clerk of Court is directed to enter judgment and close the case.

Dated:  March 21, 2024
        Syracuse, New York

*Thérèse Wiley Dancks*
United States Magistrate Judge